# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1618 | **DATE** | 10/15/2001 |
| **CASE TITLE** | Native American Arts, Inc. vs. Bundy-Howard, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Movants challenges to the Act and its implementing regulations, based on their claimed violations of procedural and substantive due process and on the regulations assertedly exceeding the bounds or regulatory authority, are rejected in their entirety. Movants' rule 12(c) motion for judgment on the pleadings is denied, and they are ordered to answer the Complaint on or before October 22, 2001. **(29-1)**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| **MAI** | Notices mailed by judge's staff. | | | date docketed | | |
| | Notified counsel by telephone. | | | | | **69** |
| ✗ | Docketing to mail notices. | | | *mw* docketing deputy initials | | |
| | Mail AO 450 form. | | FILED FOR DOCKETING | 10/16/2001 | | |
| | Copy to judge/magistrate judge. | | 01 OCT 16 PM 3: 11 | date mailed notice | | |
| SN | courtroom deputy's initials | | | SN | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIVE AMERICAN ARTS, INC.,           )
                                      )
                   Plaintiff,         )
                                      )
          v.                          )    No.  01 C 1618
                                      )
BUNDY-HOWARD, INC., etc., et al.,     )
                                      )
                   Defendants.        )

**DOCKETED**

OCT 1 6 2001

## MEMORANDUM OPINION AND ORDER

Native American Arts, Inc. ("Native American") has filed a
six-count Complaint against numerous defendants, alleging
violations of the Indian Arts and Crafts Act (the "Act," 25
U.S.C. 305e[1]).  Defendants Bundy-Howard, Inc. d/b/a Bear Tracks
("Bear Tracks") and 9-Mile Creek Traders (collectively "Movants")
now move for judgment on the pleadings pursuant to Fed. R. Civ.
P. ("Rule") 12(c), arguing that the Act is unconstitutional.  For
the reasons set forth in this opinion, the motion is denied.

Judgment on the pleadings in favor of a defendant is
appropriate when defendant clearly establishes that plaintiff
cannot prove any set of facts that would support the claim for
relief and that there are no material issues of fact to be
resolved (Northern Ind. Gun & Outdoor Shows, Inc. v. City of
South Bend, 163 F.3d 449, 452 (7th Cir. 1998)).  In considering
such a motion the court must accept as true all facts alleged by

---

[1]  Citations to the Act and other related statutes will take
the form "Section--," omitting references to Title 25.

plaintiff and must draw all reasonable inferences from the pleadings in plaintiff's favor (id.; Gillman v. Burlington N. R.R., 878 F.2d 1020, 1022 (7th Cir. 1989)), though the court is not bound to accept defendant's legal characterization of the facts (Scott v. O'Grady, 975 F.2d 366, 368 (7th Cir. 1992)). Hence this opinion's factual recital is drawn from Native American's Amended Complaint (cited "Count-- ¶--"), and it omits "Native American alleges" or any like usage (without of course making or implying any factual findings.[2]

## Background

Native American is an Indian arts and crafts organization within the meaning of the Act.[3] It is wholly Indian-owned, and it distributes authentic Indian arts and crafts (Count I ¶3). Bear Tracks is a corporation operating retail establishments in the Northern District of Illinois that sell arts, crafts and jewelry (Count I ¶4). 9-Mile Creek Traders is a wholesaler and manufacturer of Indian art and jewelry (Count I ¶11).

Bear Tracks and 9-Mile Creek Traders violated the Act by offering, displaying for sale and selling art, crafts and jewelry in a manner that falsely suggests the goods were Indian-made

---

[2] This opinion cites to Movants' supporting Memorandum as "M. Mem. --" and to Native American's response memorandum as "N. Mem. --."

[3] Section 305e(d)(4) defines an "Indian arts and crafts organization" as "any legally established arts and crafts marketing organization composed of members of Indian tribes."

(Count I ¶¶18, 25, 29-38).  Section 305e(a) prohibits:

> directly or indirectly, offer[ing] or display[ing] for sale or sell[ing] a good, with or without a Government trademark, in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization, resident within the United States....

Several of the terms in that subsection have statutory definitions.  Thus Section 305e(d)(1) says an "Indian" is "a member of an Indian tribe" or a person "certified as an Indian artisan by an Indian tribe."  While "Indian product" is not defined in the statute, Section 305a(d)(2) says the term is to be defined in regulations promulgated by the Secretary of the Interior.  Sections 305 through 305d vest power in the Indian Arts and Crafts Board ("Board"), an Interior Department agency, to enforce much of the Act--and Section 305b specifies "[t]hat all rules and regulations proposed by the Board shall be submitted to the Secretary of the Interior and shall become effective upon his approval."[4]  In turn the Board has defined "Indian product" as "any art or craft product made by an Indian" (Reg. §309.2(d).  Under Sections 305e(a) and (b) plaintiffs may recover the greater of treble damages or $1,000 per day for each day that the offending product is offered for sale or sold, as well as punitive damages and attorney's fees.

---

[4]  Board's--and hence the Secretary's--regulations implementing that power, reprinted in 25  C.F.R., are cited "Reg. §--."

## Constitutionality of the Act

In support of their motion for judgment on the pleadings, Movants contend that the Act is unconstitutional because (1) it violates procedural due process, (2) it also violates substantive due process and (3) Board's regulations exceed the scope of its authority.  Those arguments will be addressed in turn.

## Procedural Due Process Challenge

Movants' procedural due process attack has two prongs: first, various provisions assertedly fail to provide fair notice to putative defendants, and second, there is assertedly no standard for application of the punitive damages and attorney's fees provision.  Because the Act provides adequate notice of what is prohibited by the statute and provides adequate standards for non-arbitrary enforcement, both challenges are rejected.

### 1.  Void-for-Vagueness Doctrine

Under the void-for-vagueness doctrine, a law is unconstitutional "if its prohibitions are not clearly defined" (Karlin v. Faust, 188 F.3d 446, 458 (7th Cir. 1999), quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)).  There are two parts of the vagueness test:  Laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited," and they must contain "explicit standards" to avoid "arbitrary and discriminatory enforcement" (Grayned, 408 U.S. at 108-09; Karlin,188 F.3d at 458-59).  What level of vagueness is

4

constitutionally tolerable depends on a congeries of factors--and in this case those factors not only counsel in favor of tolerating some imprecision in the statute but also compel the rejection of Movants' position even apart from any generous construction of the language employed.

First, economic regulations are subject to a less stringent vagueness test than laws that inhibit the noncommercial exercise of constitutionally protected rights (<u>Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 498-99 (1982)). Here the parties agree that the Act impacts commercial speech (M. Mem. 5), and although such commercial speech is also protected by the First Amendment (<u>Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.</u>, 425 U.S. 748, 762 (1976)), the fact that such protection is grounded in providing the public with truthful and accurate information deprives commercial speech that is deceitful, misleading or fraudulent of such protection (<u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.</u>, 447 U.S. 557, 561-64 (1980); <u>United States v. Raymond</u>, 228 F.3d 804, 815-16 (7th Cir. 2000)).

In that respect Section 305e(a) prohibits displaying, offering for sale, or selling an item in a manner that creates the false impression that the item was Indian-made when in fact it was not. So the statute directly addresses false and misleading speech that misrepresents authenticity--hence

5

unprotected conduct.[5]

Second, it is true that the Act requires some products to contain affirmative representations about their origin to avoid creating a "false suggestion" (goods that may appear to be "Indian products" but were actually not Indian-produced). But that relatively minor infringement on expression--in this instance, the imposition of compelled expression--does not appreciably increase the stringency of a vagueness test.

Again the speech involved is commercial speech, afforded less constitutional protection than other forms of expression (Central Hudson, 447 U.S. at 562-63). And that being so, Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 651 & n.14 (1985) teaches there are "material differences between disclosure requirements and outright prohibitions on speech," such that "the First Amendment interests implicated by disclosure requirements are substantially weaker than those at stake when speech is actually suppressed."

2. Vagueness of the Act's Language?

With those principles established, this opinion turns to

---

[5] Several of this Court's colleagues have likewise held that speech characterized in that fashion is unprotected because there is no right to make false or deceptive speech: Native American Arts, Inc. v. Village Originals, Inc., 25 F. Supp.2d 876, 880 (N.D. Ill. 1998); Ho-Chunk Nation v. Nature's Gifts, Inc., No. 98 C 3951, 1999 WL 169319, at *3-5 (N.D. Ill.); Native American Arts, Inc. v. Earth Dweller, Ltd., No. 01 C 2370, 2001 WL 910394, at *3 (N.D. Ill.).

Movants' challenges to several of the statutory terms on that basis. They will be dealt with seriatim. And because the speech at issue is commercial in nature, the focus will be on the statute's impact on Movants--as <u>Hoffman Estates</u>, 455 U.S. at 496-97 (among other cases) has made plain:

> Finally, it is irrelevant whether the ordinance has an overbroad scope encompassing protected commercial speech of other persons, because the overbreadth doctrine does not apply to commercial speech.

(a)  "<u>Aggrieved</u>" Party

Movants contend that the lack of a statutory definition of the term "aggrieved" party renders the Act unconstitutional because it does not give a person of ordinary intelligence fair notice of the extent of that person's potential liability. Section 305(e)(a)(2)(emphasis added) provides for the greater of treble damages, or, "in the case of each *aggrieved* individual Indian, Indian tribe, or Indian arts and crafts organization, not less than $1,000 for each day on which the offer or display for sale or sale continues." On that score <u>Federal Election Comm'n v. Akins</u>, 524 U.S. 11, 19 (1998) counsels that "[h]istory associates the word 'aggrieved' with a congressional intent to cast the standing net broadly."

It is frankly difficult to understand Movants' quarrel with the use of "aggrieved," which is patently tautological: Any private party within any of the statutorily specified categories who or that has sustained damages from a statutory violation is

obviously "aggrieved" and may therefore recover such damages.
And that of course tracks Article III's standing requirements,
under which a plaintiff must show (1) a concrete and
particularized injury, (2) a causal connection between the injury
and the challenged conduct and (3) the likelihood that the injury
is redressable by a favorable decision (<u>Lujan v. Defenders of
Wildlife</u>, 504 U.S. 555, 560-61 (1992); <u>United States Court of
Appeals v. Tribal Dev. Corp.</u>, 49 F.3d 1208, 1211 (7th Cir.
1994)). Surely any defendant of ordinary intelligence is on fair
notice that if that defendant's actions cause a concrete and
particularized injury to a member of a statutory class, the
offender can expect to be sued.

As an "Indian arts and crafts organization," Native American
is within a class authorized to sue under Section 309e(c). And
the Complaint (which must be taken as true) alleges that Movants
sold and marketed items in a manner falsely suggesting they were
Indian-made when in fact they were not. Under any sensible
reading of the term "aggrieved," Native American--competing in
the market place by offering legitimate Indian-made
products--fits comfortably within that term. Enough said.

(b)  "<u>Falsely Suggests</u>"

As stated earlier, Section 305e(a)(emphasis added) imposes
liability against a person who "offers or displays for sale or
sells a good, with or without a Government trademark, in a manner
that <u>falsely suggests</u> it is Indian produced, an Indian product,

or the product of a particular Indian tribe or Indian arts and crafts organization." While Movants' attack on the emphasized language may perhaps pose a less tautological question than their challenge to the term "aggrieved," that attack also fails.

Native American does not allege that Movants' products are Act-violative simply because they are designed in a traditional Indian style or motif. Instead Count I ¶37 alleges that such products in a traditional Indian style or motif were advertised, marketed, and sold in a manner falsely suggesting they were authentic Indian products, including express representations by Bear Tracks' sales clerks, Count I ¶44 asserts the unqualified use of the word "Indian" and other terms on advertising materials, and Count I ¶39 charges Movants with advertising and marketing products in a traditional Indian style along with other products expressly represented to be Indian products. Again those allegations must be accepted as true.

It will be recalled that Congress conferred on the Board the regulatory power to flesh out various of the statutory terms--and the Board had done just that. For example, Reg. §309.3(a) specifies that "the unqualified use" of the term "Indian" or "Native American" or of the name of an Indian tribe in connection with an art or craft product conveys to the reader both that (1) the maker is a member of an Indian tribe or is a certified non-member artisan and (2) that the art or craft is an Indian product. And Reg. §309.2(d) defines "Indian product" as "any art or craft product made by an Indian," including art works in a

"traditional or non-traditional Indian style or medium." It
follows then that if "Indian" or "Native American" is used in
connection with a product, for purposes of the Act that equates
to a representation that the product has been made by an Indian
or certified artisan. If no Indian or certified artisan has in
fact made the product, that representation falsely suggests that
the product is of Indian origin, in violation of the statute. No
vagueness whatever is even arguably involved.

Hoffman Estates and like cases confirm that for a court to
resolve alleged void-for-vagueness contentions, it is unnecessary
to go beyond what the commercial speaker has itself done. Hence
this opinion need not go on to consider whether that flaw
attaches to the notion that products in a traditional Indian
style or motif, but that are silent as to their origin, can also
"falsely suggest" that they are "Indian products." If Native
American delivers as is advertised (an admittedly bad pun) by the
Complaint, any such silence is not at issue--in each instance
Movants are said to have made their false suggestions either by
express misrepresentations or by misleading conduct. Again that
suffices to withstand any challenge on vagueness grounds.

Finally in that respect, Movants have argued that there can
be reasonable differences of opinion as to whether a product made
in a traditional Indian style falsely suggests Indian origin.
But whether a particular manner of advertising or sale has
actually conveyed a false suggestion is a question of fact to be
determined by the factfinder. Such disputes are not properly

10

resolved via a Rule 12(c) motion.

(c)   Compensatory Damages Provision

Movants also urge that the Act's compensatory damages provision is unconstitutionally vague, though they fail to cite any supporting caselaw and rely instead on a series of confusing hypothetical damages calculations.   In that regard Section 305e(a) provides:

> A person specified in subsection (c) of this section may, in a civil action in a court of competent jurisdiction, bring an action against a person  who offers or displays for sale or sells a good, with or without a government trademark, in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization, resident within the United States, to...
>
> > (1) obtain injunctive or equitable relief; and
> >
> > (2) recover the greater of –
> >
> > > (A)   treble damages; or
> > >
> > > (B)   in the case of each aggrieved individual Indian, Indian tribe, or Indian arts and crafts organization, not less than $1,000 for each day on which the offer or display for sale or sale continues.

That language is certainly not so ambiguous that it fails to provide fair notice of the extent of potential liability under the Act.   It is sufficiently plain from the use of the words "good" and "product" that the $1,000-per-day damages floor applies to each different type of product rather than to each item of inventory, as Movants speculate.   Had Congress instead intended to impose the potentially astronomical liability of $1,000 per day for each individual piece of a falsely suggestive

11

product offered for sale or sold, it would surely have specified such extraordinary exposure explicitly--and it did not.

On the flip side of that coin, Movants' speculation that perhaps $1,000 per day may be assessed only once no matter how many types of products violate the Act (M. Mem. 3-4) cannot withstand scrutiny either (D. Mem. 3-4). Section 305e(a) uses the words "good" and "product" in singular form. It could scarcely be more evident that Movants can expect damages to be assessed for each separate "good" or "product," rather than suffering a single assessment for all goods or products collectively. This common sense view comports with the manner in which other statutes have been read (see, e.g., <u>United States v. H.B. Gregory Co.</u>, 502 F.2d 700, 706-07 (7th Cir. 1974)).

In sum, the damages provision provides adequate notice as to the extent of Native American's potential liability. Movants' challenge fails.

(d) <u>Punitive Damages and Attorney's Fees Provisions</u>

Next Movants contend that the lack of standards in the provisions for punitive damages and attorney's fees renders the Act unconstitutionally vague, although once again they fail to cite even a single case. On that score Section 305e(b) provides simply that in addition to the other relief provided for, "the court may award punitive damages and the costs of suit and a reasonable attorney's fee."

To be sure, the statute itself provides no yardstick, but

the same may be said of countless statutes that confer the right to seek such relief, instead leaving it to the courts to create and apply standards. It is really unnecessary to say more than that about fee-shifting, and only brief thought is needed to dispatch the vagueness challenge as to punitive damages.

As for that remedy, universal caselaw teaches that such damages may be imposed to achieve the objectives of punishment and deterrence where defendants act "wantonly and wilfully...or were motivated in their actions by ill will, malice, or a desire to injure the plaintiffs" (Allahar v. Zahora, 59 F.3d 693, 696 (7th Cir. 1995), quoting earlier caselaw; see also BMW of North America, Inc. v. Gore, 517 U.S. 559, 568 (1996)). In applying the constitutional prohibition against punitive damage awards that are "grossly excessive" (Gore, id.), the Supreme Court has established three guideposts (Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 324, --, 121 S.Ct. 1678, 1687 (2001)):

> In Gore, we instructed courts evaluating a punitive damages award's consistency with due process to consider three criteria: (1) the degree or reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

Although those standards are not spelled out in the Act, the same may be said of like statutory provisions in every jurisdiction. Certainly the Act does not call for punitive damage awards in excess of those permitted by the Gore

13

formulation.  Like other similar legislation, it merely states that "judges may award punitive damages."  Courts are certainly capable of applying the Supreme Court standards to the Act. Movants' challenge on vagueness grounds is an empty one.

## Substantive Due Process Challenge

Movants also argue that the $1,000 per day per good damages floor specified in Section 305e(a)(2)(B) violates substantive due process.  As with punitive damages, the specification of compensatory damages by legislatures is not without limit.[6] Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 276 (1988) at least suggests that "the Due Process clause places outer limits on the size of a civil damages award made pursuant to a statutory scheme."

To begin with, the Act deals with the selfsame problem that is addressed in trademark cases in pointing out the need for injunctive relief because of the inadequacy of a remedy at law against the infringer.  As this Court has said in Instrumentalist Co. v. Marine Corps League, 509 F.Supp. 323, 333 (N.D. Ill. 1981), quoted and followed by our Court of Appeals in Hyatt Corp. v. Hyatt Legal Servs., 736 F.2d 1153, 1158 (7th Cir. 1984):

---

[6]  Movants seek to invoke the Gore-specified criteria to argue that the $1,000 per day provision is unconstitutional.  But in addition to failing to recognize the distinction between punitive damages and the $1,000 per day provision now under consideration, Movants completely overlook the language in Gore, 517 U.S. at 583 that says "a reviewing court engaged in determining whether an award of punitive damages is excessive should 'accord "substantial deference" to legislative judgments concerning appropriate sanctions for the conduct at issue.'"

14

> [T]here is no effective way to measure the loss of
> sales or potential growth--to ascertain the people who
> don't knock on the door or to identify the specific
> persons who do not reorder because of the existence of
> the infringer.

In such a situation, where the infringer's own conduct has made
the precise calculation of damages more difficult (see, e.g.,
Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264-65 (1946)), it
is surely competent for the legislature to state its view of the
minimum damages to be awarded.

And even if that view were considered to contain some
punitive element in terms of the compensation of private injury
alone, in this instance Congress also intended to address and
deter the overall harm to the public caused by counterfeit Indian
products:  Here the Act's legislative history confirms its
purposes of (1) protecting Indian artists from unfair competition
from counterfeiters and (2) protecting consumers from unknowingly
purchasing imitation products (H.R. Rep. No. 101-400(I) and 101-
400(II), 101st Cong., 2d Sess. (1990), reprinted in 1990
U.S.C.C.A.N. 6382, 6382-84 and 6391, 6391-94).  Relatedly, the
Act was also intended to protect and preserve an important aspect
of Native American culture (see 136 Cong. Rec. H8291-01, H8293
(1990)).

Where a statutory damage provision is so designed to address
such "public wrongs," it need not be "confined or proportioned to
[actual] loss or damages; for, as it is imposed as a punishment
for the violation of a public law, the Legislature may adjust its

amount to the public wrong rather than the private injury" <u>St.</u>
<u>Louis, Iron Mt. & S. Ry. v. Williams</u>, 251 U.S. 63, 66 (1919);
accord, <u>United States v. Dotterweich</u>, 320 U.S. 277, 280-81
(1943)). That consideration meshes with the already-described
difficulty in quantifying the amount of actual damages suffered
by any aggrieved plaintiff because of the statutorily defined
wrong (a difficulty created by the wrongdoer's own prohibited
activity)--those factors combine to validate Congress'
establishment of the $1,000 per day floor. And to boot, such a
provision for substantial compensatory damages is an effective
way to provide an incentive to injured individuals to bring suits
as well as to generate effective deterrence on the part of the
offenders.

In sum, the complained-of damages provision, when examined
in light of the harms that Congress was trying to prevent and the
strong public interest in deterrence, is not "so severe and
oppressive as to be wholly disproportioned to the offense or
obviously unreasonable" (<u>St. Louis Ry.</u>, 251 U.S. at 67). Movants
are of course free to argue to Congress that the $1,000 figure is
ill-advised, but such a contention is not properly addressed to
this Court.

<u>Validity of the Board's Regulations</u>

Finally, Movants would have it that the regulations
promulgated by the Board exceed the regulatory authority granted
by Congress by "adding definitions" to the Act (M. Mem. 15). To
that end Movants seek to focus primarily on the interpretation of

16

the statutory term "Indian product." Section 305e(d)(2) delegated that definitional task to the Board by stating that the terms "Indian product" and "product of a particular Indian tribe or Indian arts and crafts organization" have "the meaning given such term[s] in regulations which may be promulgated by the Secretary of the Interior." In turn the Board engaged in Notice and Comment rulemaking proceedings and adopted Reg. §309 in 1996.

After Reg. §309.2(d) first says that an "Indian product" is in general "any art or craft product made by an Indian," Reg. §309.3 goes on to specify that the "unqualified use" of the terms "Indian" or "Native American" or of the name of an Indian tribe in connection with an art or craft product will be interpreted to mean in part that the product is an "Indian product."[7] Those regulations are plainly within the authority expressly delegated to the Board by Congress, and they are neither arbitrary,

---

[7] Here is the relevant text of Reg. §309.3:

§309.3 How will statements about Indian origin of art or craft products be interpreted?

(a) In general. The unqualified use of the term "Indian" or of the term "Native American" or the unqualified use of the name of an Indian tribe, in connection with an art or craft product, is interpreted to mean for purposes of this part that --

(1) the maker is a member of an Indian tribe, is certified by an Indian tribe as a non-member Indian artisan, or is a member of the particular Indian tribe named; and

(2) The art or craft product is an Indian product.

capricious, nor manifestly contrary to the statute. That being so, the familiar teaching of Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) is that this court is bound to give deference (Chevron's seminal decision has been reiterated and applied by virtually innumerable cases, the Supreme Court's most recent opinion in that respect being United States v. Mead Corp., -- U.S. --, 121 S.Ct. 2164 (2001)).

When "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute" (Chevron, 467 U.S. at 843-44; accord, Mt. Sinai Hosp. Med. Ctr. v. Shalala, 196 F.3d 703, 708 (7th Cir. 1999)). Mead, 121 S.Ct. at 2171 has recently reconfirmed the circumstances in which Chevron deference applies:

> We hold that administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency's interpretation claiming deference was promulgated in the exercise of that authority. Delegation of that authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable Congressional intent.

What Congress and the Board did in this instance fits that holding like a glove.

First, wholly unlike the situation addressed in Mead,

Congress' express provision that the term "Indian product" was to have the meaning given by the Secretary of the Interior was unquestionably intended to delegate the authority for defining the term and to render that agency's elucidation controlling (see, e.g., such cases as National Med. Enters., Inc. v. Sullivan, 957 F.2d 664, 667-69 (9th Cir. 1992) and Wint v. Yeutter, 902 F.2d 76, 81 (D.C. Cir. 1990)). That intent was plainly manifested by the express delegation itself, coupled with the Board's power to engage in notice-and-comment rulemaking.

Moreover, Congress' enactment of the year 2000 amendments to the Act without any change in the meaning reflected in the regulations inferentially conveys approval of the Board's existing interpretation (CFTC v. Schor, 478 U.S. 833, 846 (1986); Geldermann, Inc. v. CFTC, 836 F.2d 310, 316 (7th Cir. 1987)). And that inference is rendered even stronger than if congressional silence alone were involved--here one of the year 2000 amendments (Section 305e(f)) explicitly directs the Board to promulgate regulations providing specific examples of the definition of "Indian product" to provide further guidance to artisans and consumers. If Congress had disapproved of the already-promulgated definition, it surely would have said so rather than asking for a further expansion.

Second, the Board's regulations were promulgated in the exercise of properly delegated authority. Section 305a provides that the function of the Board is to promote the economic welfare of Indians through the development of Indian arts and crafts and

the expansion of the market for such products. Section 305b expressly requires the Board to prescribe rules and regulations to execute its function effectively--and those become effective on the approval of the Secretary of the Interior, to whom Congress has delegated the authority at issue.

As stated earlier, the Board followed formal notice-and-comment procedures in promulgating the regulations--a proper exercise of delegated authority. It defined "Indian product" as it was specifically instructed to do. All other terms about which Movants complain, including "Indian," were defined in the Act by Congress itself (Section 309e(d)). So it misstates the situation to charge that the Board "add[ed] definitions."

Finally, it likewise distorts the record to label the regulations as arbitrary, capricious or manifestly contrary to the statute. It was neither arbitrary nor capricious for the Board to conclude that a design in a traditional Indian style or the "unqualified use" of the terms "Indian" or "Native American" in connection with a product suggests that the product is Indian-made. Instead the Act is a "truth-in-advertising law designed to prevent products from being marketed as 'Indian made,' when the products are not, in fact, made by Indians as defined in the Act" (Protection for Products of Indian Art and Craftsmanship, 59 Fed. Reg. 51908, 51909 (proposed Oct. 13, 1994)). It was entirely reasonable for the Board to conclude as it did that its

definition of "Indian product" would help curb sales of counterfeit goods that used the referenced terms to suggest falsely that the products were Indian-made.   Such a conclusion cannot be contrary (let alone manifestly so) to the statute, for it directly advances the Act's purpose of eliminating counterfeiting.

## Conclusion

Movants' challenges to the Act and its implementing regulations, based on their claimed violations of procedural and substantive due process and on the regulations assertedly exceeding the bounds of regulatory authority, are rejected in their entirety.   Movants' Rule 12(c) motion for judgment on the pleadings is denied, and they are ordered to answer the Complaint on or before October 22, 2001.

Milton I. Shadur
Senior United States District Judge

Date:   October 15, 2001